**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anthony D. PARKER, Defendant–Appellant.**

**No. 01–5544.**

United States Court of Appeals, Sixth Circuit.

Oct. 18, 2002.

Before DAUGHTREY, GILMAN, and GIBSON,* Circuit Judges.

PER CURIAM.

The defendant, Anthony Parker, was charged in a two-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and was convicted by a jury on both counts. On appeal, he contends that his conviction should be reversed based on the following

* The Hon. John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

errors at trial: (1) introduction of impermissible "other crimes" evidence; (2) insufficiency of the evidence as to Count 2 of the indictment; and (3) improper vouching for the credibility of witnesses by the prosecution. We find no reversible error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Each of the possession charges against Parker resulted from the recovery of a firearm when an automobile driven by Parker, or one in which he was a passenger, was stopped by police.

The first of the two occasions followed an armed robbery that occurred in a Wal-Mart parking lot located on American Way in Memphis, Tennessee. Paul Boyce and Alicia Tuggle were returning to their pick-up truck with their small child when an assailant appeared, pressed a gun into Boyce's back, and demanded that he turn over his money and jewelry. The robber then made the same demand of Tuggle, pointing the gun at the child's head and threatening to shoot if Tuggle and Boyce did not cooperate. The robber also attempted to steal the couple's truck but was unable to operate the standard transmission.

At this point, Boyce decided to escape from the scene and seek help. He told Tuggle to run with the child and began yelling aloud in the parking lot, "I'm being robbed, this guy has a gun." The assailant fled in the direction of a wooded area and down a muddy creek embankment located near the Wal-Mart store, and Boyce ran back into the store to summon police.

Soon thereafter, Memphis police officer Paul Castillo received a radio call regarding an armed robber in the area of the Wal-Mart on American Way. Castillo was traveling eastbound on American Way when he saw that the driver and passenger in a westbound Buick were "staring at him pretty hard." As Castillo focused his attention on the Buick, he noticed that in addition to the driver and passenger in the front seat, there was also a man in the back seat. As the man in the back seat caught the officer's eye, he quickly laid down across the seat. Finding this gesture suspicious, Castillo made a u-turn to pursue the automobile, and the Buick "sped off real quick." Castillo followed the car to the parking lot of the Memphis Inn, located off of American Way just a few blocks down from the Wal-Mart store. He then pulled over the automobile and radioed for back-up assistance.

Upon stopping, the driver of the automobile, Barbara Sellers, immediately jumped out of the car and asked Castillo, "What did I do, what did I do?" Castillo continued to notice a man laying in the back seat of the car. When another squad car arrived on the scene, Castillo asked the back-seat passenger, later identified as defendant Parker, to leave the automobile, observing that his "chest was pounding," that he was sweating "fiercely," and that his left leg was muddy and it "looked as if he [had been] wading in water."

Castillo searched Parker's person, recovering both cash and jewelry from his pockets, including several rings and her-ringbone necklaces. Castillo placed the recovered jewelry on the trunk of his car. As Castillo removed Parker from the car, he saw a gun on the floorboard in the rear of the car, approximately two feet from where Parker had been hiding. The gun, a .38 Smith & Wesson revolver, was splattered with mud.

Boyce and Tuggle were brought to the scene of Parker's apprehension. They identified the jewelry located on the back of Castillo's squad car as their own that had just been stolen, and both identified

Parker as the man who had just robbed them. They also identified the gun in the car as the weapon used during the robbery.

In his own defense, Parker testified that he had actually been the robbery victim in the Wal–Mart parking lot that evening and that the assailant was "Big Pat," the name by which he knew Boyce. He claimed that he had met up with the Buick, driven by his girlfriend Sellers, in the Memphis Inn parking lot and denied that he had ever been lying in the back of the vehicle. He testified that the jewelry recovered from his pocket was his own, obtained through his previous drug sales. He also testified that he was unaware that there was a gun in the car.

Some two months after his arrest on the robbery charge, Parker was pulled over during a routine traffic stop after two patrol officers saw his vehicle "dart out" from a side street at a high rate of speed. After the officers turned on their blue lights in an attempt to get the driver to pull over, they noticed that he was making suspicious motions in the vehicle, moving up and to the right of the driver's seat. They also noticed a passenger in the automobile. Once the vehicle came to a stop, the driver turned out to be defendant Parker. After he was removed from the car, he could not produce a driver's license. At this point, the officers decided to conduct a security sweep of the automobile and, as a result, discovered a .38 revolver hidden in a rolled-up floor mat jammed under the accelerator of the car. At trial, Parker testified that he had merely borrowed the car and was not aware that the gun was in the automobile at the time of the stop.

Prior to trial, defense counsel filed a motion-in-limine to exclude any testimony regarding the robbery at the Wal–Mart parking lot, arguing that it was unduly prejudicial under Rule 404(b). The trial

court judge held that the testimony could come in to show possession of the firearm, given that the defense planned to contest Parker's knowledge of the weapon's existence in the car. However, the trial court agreed that testimony regarding the defendant's using the gun against the child was unduly prejudicial.

As a consequence, the government did not elicit any information regarding the threat to the child in direct testimony. However, when defense counsel cross-examined Tuggle, counsel pressed the witness to explain how she was able to identify the gun used in the robbery. When defense counsel asked the witness to "tell us how you were able to notice what kind of gun it was," the following exchange occurred:

Tuggle: Because after all this took place, after—after I was handing him my jewelry, Paul Boyce gave his jewelry over, he leaned over in the car. At that particular time, my baby was crying, and he had the gun up to my baby's—

Defense Counsel: Tell me about what—

Tuggle: That's how I knew what kind of gun it was, when he had it up to my baby's head. That's how I knew what kind of gun it was, and I remember—

Defense Counsel: Your Honor, I move to strike.

The district judge declined to strike the answer but did give the jury a limiting instruction that the defendant was not charged with any crimes except those contained in the indictment. The government later referred to Tuggle's testimony concerning the baby twice in closing argument.

In that closing argument, the prosecutor also noted that with regard to Count 1, the jury would have to make a credibility determination concerning the conflict between the victims' testimony and that of

the defendant, and he asked the jury to consider who had a "motive to lie."

The jury found Parker guilty on both counts, and he was sentenced to 327 months' imprisonment.

## ANALYSIS

### 1. Admission of Testimony Regarding the Threat to the Child

■ In arguing that the district court abused its discretion in failing to strike testimony regarding the threat to the child, the defendant complains principally that the district judge changed his ruling mid-stream, at first not allowing any testimony concerning the threat to the child under Federal Rule of Evidence 403 but later allowing such testimony after it came out on crossexamination. We find no error. Regardless of the correctness of the original ruling by the district court, we conclude that defense counsel "opened the door" to this testimony during cross-examination. By directly challenging Tuggle's testimony regarding her ability to view the weapon during the robbery, defense counsel elicited the very response that she had initially sought to exclude and cannot now complain that it came to the jury's attention. See United States v. Abdullah, 162 F.3d 897, 904 (6th Cir.1998) (holding that it is not an abuse of discretion to allow the introduction of "other crimes" evidence when defense counsel elicits the testimony).

Moreover, we are not convinced that the evidence was properly subject to exclusion under Rule 403 in the first place. As we noted in United States v. Sanders, 95 F.3d 449, 453 (6th Cir.1996), the exclusion of relevant evidence under Rule 403 is not required when that evidence is "prejudicial only in the sense that it paints the defendant in a bad light."

Finally, admission of the testimony in this matter is subject to harmless error

review. See United States v. Fountain, 2 F.3d 656, 668 (6th Cir.1993). Given the overwhelming nature of the other evidence pointing to Parker's guilt under Count 1 of the indictment, including testimony regarding the mud observed on his person, the jewelry found in his pocket, and the location of the gun in the car, there can be little doubt that any error committed was harmless.

### 2. Sufficiency of The Evidence Supporting Count Two

■ In reviewing a challenge to the sufficiency of the government's proof presented at trial, we must determine "whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

To convict a defendant of a violation of 18 U.S.C. § 922(g)(1), the government must establish: (1) that the defendant possessed a firearm, (2) that ·the defendant had a previous felony conviction at the time of possession, and (3) that the firearm traveled in or affected interstate commerce. See 18 U.S.C. § 922(g)(1); see also United States v. Layne, 192 F.3d 556, 571–72 (6th Cir.1999). In this case, the defendant challenges only the proof provided to establish possession. Under well-established Sixth Circuit precedent, possession sufficient to violate the statute may be either actual or constructive. See United States v. Daniel, 134 F.3d 1259, 1263 (6th Cir. 1998).

The record indicates that Parker was driving the automobile from which the firearm was recovered, that he was observed making motions consistent with an attempt to conceal something before submitting to

the officers' request that he stop the automobile, that he acted suspiciously when he was finally pulled over, that he appeared to have exclusive control over the area from which the gun was recovered, and that the gun was recovered from underneath the accelerator, indicting that it had been recently moved to that location. Of course, it is not our role to reweigh the evidence, reassess the credibility of the witness, or substitute our judgment for that of the jurors. *See United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Nevertheless, we have little doubt that this evidence was substantial enough to convince a reasonable trier-of-fact that Parker was in constructive, if not actual, possession of the weapon found in the car and was, therefore, guilty beyond a reasonable doubt of the charge set out in Count 2 of the indictment.

### 3. The improper Vouching Claim

█ In his final challenge to his conviction, the defendant contends that the prosecutor improperly vouched for the credibility of government witnesses during closing argument. Because the defendant did not object to the government's arguments at trial, we review the prosecutor's statements for plain error. *See United States v. Carter,* 236 F.3d 777, 783 (6th Cir.2001). Accordingly, we may grant the defendant relief on this claim only if there is error that is plain, substantial rights are affected by the error, and the error seriously affects the fairness, integrity, or public reputation of the proceedings. *See id.*

In order to establish that the government engaged in improper vouching, a defendant must demonstrate that the government's remarks were improper and, if improper, that they were flagrant. *See id.* "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the wit-

ness's credibility ...." *United States v. Francis,* 170 F.3d 546, 550 (6th Cir.1999). Our review of the challenged remarks in this case fails to reveal any improper indications of personal belief by the prosecutor. The prosecutor asked the jury to draw reasonable inferences from the evidence, encouraging the jurors to look at the evidence presented while considering the motivations behind the testimony. Under *United States v. Collins,* 78 F.3d 1021, 1040 (6th Cir.1996), counsel must be given leeway to argue reasonable inferences from the evidence. In "submitting" that the various government witnesses had "no reason to lie," the prosecutor directed the jurors back to the "believable" testimony but never asserted as a matter of personal conviction that the witnesses were honest, did not rely on knowledge outside of the facts presented at trial, and did not argue that there was an outside arrangement with the government, such as a plea agreement, requiring honesty. *Compare United States v. Carroll,* 26 F.3d 1380 (6th Cir.1994) (improper vouching by blatantly implying certain witnesses' plea agreements ensured their testimony was truthful); *United States v. Dandy,* 998 F.2d 1344, 1353 (6th Cir.1993) (improper vouching by telling the jury a witness is "honest," implying personal knowledge of veracity). Rather, the prosecutor in this case merely referred to the evidence and offered an explanation for the witnesses' possible motivation to lie or to tell the truth in a situation in which credibility was key to the jury's determination of guilt or innocence. We find no plain error in this regard.

### CONCLUSION

For the reasons set our above, we AFFIRM the judgment of the district court.