NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0382n.06

No. 08-4473

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 06, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ANNTRINA COLLINS, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE, GIBBONS, and MCKEAGUE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Anntrina Collins appeals a jury's verdict finding her guilty of two counts of making false statements in the acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6), and one count of unlawful disposal of a firearm through delivery to a felon, in violation of 18 U.S.C. § 922(d)(1). On direct appeal, Collins argues: (1) the district court erred in denying the government's motion to disqualify Collins's counsel, when her counsel also represented her husband, whose interests were adverse to hers; (2) Collins was denied effective assistance of counsel; (3) the district court erred by permitting the government to introduce evidence of prior bad acts that deprived Collins of a fair trial; and (4) the district court abused its discretion by imposing a sentence of forty-eight months' imprisonment when the Sentencing Guidelines recommended a sentence between fifteen and twenty-one months. For the reasons that follow, we affirm.

I.

The facts of this case are based on the record developed at trial. Anntrina Collins is a thirty-seven year-old mother of four. In 1996, she married Ronald Gunter, who is the biological father of three of Collins's children. The couple separated in 2007 but remain legally married. Collins has a bachelor's degree in business and, prior to her conviction, held steady employment as an administrative assistant with various business organizations.

On November 19, 2005, Carleton Gilmore was the victim of a felonious assault, robbery, and attempted murder. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Christopher Arone traced one of the firearms used in the assault—a Hi-Point .9 millimeter pistol—and found that Collins had purchased the pistol, and a second one, at a gun show twenty-seven days earlier.

At trial Collins testified that she had attended a gun show in Berea, Ohio, with Gunter on October 22 and 23, 2005. Collins alleged that she had a problem with trespassers and wanted a gun for protection. According to Collins, she had no specific knowledge about firearms, but while at the gun show she learned that Kalashnikov automatic rifles—commonly known as AK-47s—would be a "good investment" and consequently purchased two. Collins explained that after purchasing the assault rifles she was out of money, so she returned the next day and purchased two Hi-Point handguns for herself and her sister. Then, after a person at the gun show told her that the Taurus handgun was better, she purchased one of those as well. She also purchased one more AK-47, after the dealer reiterated what a good investment it would be. Collins thus purchased six guns at the gun show—three AK-47s, two Hi-Point handguns, and a Taurus handgun. While filling out the required

forms, Collins initially answered "No" when asked if she were purchasing the guns for herself; she then crossed out the "No" and put "Yes." At trial she explained this was simply a mistake because she was filling out the forms too fast. Although Collins was unemployed at the time of the purchases, she stated that she got the money for the guns from her student loans.

Collins reported that she put the guns in storage. She and Gunter placed the AK-47s and one of the Hi-Points in the garage. The Hi-Point was stored in a cubbyhole, and the AK-47s were stored in a chicken coop. Collins planned to leave the AK-47s in the garage until a display case could be built. She stored the Taurus and the second Hi-Point in her home.

Shortly thereafter, Collins recounted, she realized that she had spent too much money at the gun show and that she would need money for Christmas. Collins told Gunter to let her know if he knew anyone who would want to buy a gun. She allegedly gave him permission to sell one of the Hi-Points, although she also stated that she never gave Gunter actual possession of the gun, which later ended up missing.[1] Not long afterward, Agent Arone contacted Collins.

In his testimony, Arone explained that, upon matching the Hi-Point from Gilmore's assault, and noting that one of the suspects from the assault was not allowed to possess firearms, he went to Collins's house to investigate in February 2006. Arone recorded his interviews with Collins that day without her knowledge.

---

[1]Collins testified that Gunter confessed to her that he had sold the gun. However, the prosecution objected to this testimony, and the court sustained the objection. Collins cites this testimony, but although the evidence is in the record, the jury was instructed to disregard it.

Arone learned that a Taurus remained in Collins's home; both of the Hi-Points were gone. Because he had been drawn to Collins's home from his investigation into the Hi-Point, Arone testified that this visit was the first time he learned that Collins had also purchased the Taurus. Arone testified that Collins did not mention the purchase of the AK-47s during the first interview; rather she said she had only purchased the handguns.

Arone testified that several things Collins told him during the first interview "raised red flags." For example, Arone testified that Collins told him she had purchased the Taurus for protection, but in his visit Arone saw that she kept it unloaded. Arone also testified that he wondered why Collins would store a gun in the unsecured garage, as she said she had done with the Hi-Point that was no longer there. Arone wondered why Collins promised she would show him both Hi-Points when he knew one of them had been recovered in November and "could not possibly be there." And Arone wondered at Collins's statement that she gave a Hi-Point to Gunter, a convicted felon, to sell for Christmas money.[2] In light of these concerns, Arone further investigated Collins upon his return to the office. He discovered that she had purchased another Hi-Point in 2000, which had been found in Gunter's possession just twenty-one days later.

Because of these new findings, Arone returned to Collins's house later that same day. On the second visit, Collins admitted to having purchased other guns at the gun show, including the AK-47s. When Arone inquired about those AK-47s, Collins told him that they had been "given away."

---

[2]Collins's statement to Arone that she gave the Hi-Point to Gunter to sell conflicts with Collins's own testimony, which implied that Gunter took the gun on his own.

Therefore, at the time of Arone's visit, only the Taurus was in Collins's home and accounted for by her.

A little over a year later, Gunter and Carleton Gilmore were detained in a traffic stop by Cleveland police. The Taurus that Arone had seen at Collins's home was found in the car, and Gunter eventually claimed responsibility for it. Gunter thus had possession of the Taurus even though, after Collins had told Arone that Gunter was a convicted felon, Arone had informed Collins that Gunter was prohibited from possessing firearms.

Collins was indicted on January 30, 2008, on one count of making false statements in the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6). The false statement at issue was Collins's statement that she was the buyer when in fact she was not the actual buyer. A superseding indictment followed on April 15, 2008, which upped the number of false statement charges to three and added a charge for knowingly delivering a firearm to Gunter, a felon, in violation of 18 U.S.C. § 922(d)(1).

Prior to trial, the trial court ruled on two motions that are central to this appeal. The first motion was made by the government and concerned a potential conflict of interest for Collins's attorney, Carolyn Kaye Ranke. Collins had chosen a lawyer who had previously represented Gunter in six different criminal matters, including the 2007 arrest for possession of the Taurus. The government worried that Collins's counsel would be conflicted over "how to effectively cross-examine a former client, to the benefit of a current client, without using information obtained from the former client in confidence." The government was so concerned about the conflict that it argued,

"[s]hould Attorney Ranke continue to represent Collins and a conviction result, Collins is virtually guaranteed a successful . . . challenge to her conviction."

Collins responded that, while her attorney had previously represented Gunter, she had also represented Collins in civil matters and served as the "family attorney." In her response, Collins stated both that she desired to keep her attorney and that she did not believe an actual conflict existed. Collins emphasized "her constitutional right to counsel of choice absent a clear finding of actual conflict by th[e] Court." She argued that Gunter would be a defense witness and that Gunter faced no additional criminal charges. Rather, Collins argued, her statements were consistent with Gunter's, and the two of them would have a "common defense."

The district court permitted Collins to keep her attorney. The court noted that in a hearing on this matter Gunter had waived his right to attorney-client privilege; thus, "the fear that Ranke may use confidential information in an improper manner has been wholly removed." Additionally, the district court noted that Collins had waived, on the record, any potential conflict; moreover, the district court could not "say that the potential conflict is so great that no rational defendant would waive it." Finally, Collins testified that she was paying her attorney, so no conflict existed in the remuneration. Because a defendant enjoys a rebuttable presumption in favor of counsel of choice, *see Wheat v. United States*, 486 U.S. 153, 164 (1988), and because the government offered insufficient evidence to deprive Collins of her choice, the district court allowed Collins to keep her attorney.

The second relevant preliminary motion was one by Collins to exclude evidence of other guns Collins had purchased in 2000 and 2001 that had ended up in Gunter's possession or had

otherwise been lost. The government stated that the evidence of the prior purchases was not character evidence but rather evidence meant to show intent, motive, and lack of mistake. The district court, however, found that the approximately five-year delay between the purchase of those weapons weighed against introducing the evidence for the purposes cited and that the picture painted through this evidence, of a "woman who routinely purchases firearms then provides them to convicted felons," would create "a nearly insurmountable obstacle for the jury to reach a verdict solely on the facts supporting the *current charges*." Accordingly, the court ruled for Collins and excluded the other acts evidence.

This preliminary ruling was changed by events at trial. On cross-examination of Arone, Collins's counsel implied Arone had no basis for disbelieving Collins or returning to her home a second time, when in fact Arone returned because he discovered that Collins had purchased pistols before that had ended up in felons' hands, purchases she had not disclosed. After listening to the recordings of Arone's interviews with Collins, the district judge determined that Arone

> obviously suspects and believes [that Collins is lying about her transfers of guns to Gunter], . . . and he's confronting her based upon the 2000 and 2001 incidents. So it's unfair for you to be permitted . . . to cross-examine him as to his reasons for believing that she's lying, and then for the court to exclude the very basis and reasons why he believes that to be the case.

The prior acts of the 2000 and 2001 purchases were permitted to show why Arone did not believe Collins, and the judge gave a limiting instruction to the jury to that effect.

On May 27, 2008, the jury found Collins guilty on three counts: two counts of making false statements in acquiring firearms and one count of conveying a firearm—one of the Hi-Points—to a known felon. Collins was acquitted of making false statements in acquiring the Hi-Points.

7

The Pre-Sentence Report ("PSR") prepared for sentencing concluded that the United States Sentencing Guidelines recommended a sentence range of fifteen to twenty-one months. The district judge did not follow the PSR's recommendation; rather, he varied Collins's sentence up to forty-eight months' imprisonment.

In an oral hearing and a separate, written memorandum, the district court emphasized several factors with regard to Collins that led it to deem her particularly culpable and warranting a longer sentence. First, the court emphasized the danger of maintaining weapons in a home with four children. The court was also troubled by Collins's testimony at trial, parts of which it found "beyond belief." The court also noted that agents had found ammunition in Collins's house that did not match any of the weapons she is known to have purchased, which suggests "[Collins] has either purchased ammunition for a gun she never owned or has possessed guns that the government is unaware she had purchased." Finally, the court emphasized the particularly dangerous nature of the still unrecovered weapons Collins had purchased and the risk those weapons posed to the public. Collins's refusal to help mitigate the risk by cooperating with the government's effort to recover the weapons, the court found, should be considered in sentencing.

Thus, in light of Collins's culpability and the seriousness of her making weapons available to others, the court concluded, "[A] penalty above the advisory guideline range is necessary to deter [Collins] and protect the public" and to "compel [Collins] to recognize the seriousness of her crimes." Moreover, the court stated: "As these convictions are increasingly difficult to obtain, it is all the more important to hand down a sentence that will deter others, despite their belief that they

will not be apprehended." Thus, in order to show Collins the seriousness of her crimes and to alert others to the seriousness too, the court found that a longer sentence was warranted.

## II.

Collins raises four arguments before this court. She first claims that it was error for the district court to deny the government's motion to disqualify her counsel. Collins alleges that she had a viable defense that Gunter had taken the guns without her consent or forced her to purchase them for him, yet her counsel did nothing to push the blame onto Gunter. Collins argues that the district court erred in its attorney-conflict hearing because the court was most concerned with whether the joint representation would compromise Gunter's confidential communications and prejudice him. Instead the court should have been concerned with Collins's counsel's ethical obligation to Gunter and whether that obligation would make her counsel "unlikely to implicate [Gunter] in the theft or possession of these weapons or to pursue any defense that might transfer blame from Ms. Collins to him." An actual conflict existed, according to Collins, because had counsel pursued a defense that shifted blame to Gunter, then counsel would have exposed Gunter to possible state theft or federal gun possession charges. Collins's counsel was too deeply conflicted because Collins's best defense strategy required that her attorney violate an ethical duty of loyalty to another client.

## A.

Collins cites *Serra v. Michigan Department of Corrections* for the proposition that a conflict such as the one her counsel had can be enough to justify disqualification of an attorney. 4 F.3d 1348, 1352 (6th Cir. 1993) ("'[A] conflict may . . . prevent an attorney from . . . arguing . . . the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing

that of another.'" (quoting *Holloway v. Arkansas*, 435 U.S. 475, 489–90 (1978))). Because this type of conflict has been recognized already by this court, Collins argues that the district court erred by denying the government's motion. Citing *Holloway*, 435 U.S. at 489–91, Collins argues that "a district court's refusal to disqualify conflicted counsel requires automatic reversal and is not subject to harmless error analysis. . . . [Therefore] Collins' conviction and sentence must be reversed and this matter remanded for a new trial."

Collins's citation to *Holloway* is incorrect. The Supreme Court has since held, in ruling on an ineffective assistance of counsel claim, "*Holloway* . . . creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." *Mickens v. Taylor*, 535 U.S. 162, 168 (2002). Absent such objection, a defendant must demonstrate "'a conflict of interest [that] actually affected the adequacy of . . . representation.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980)). This court has also noted the limited circumstances in which *Holloway*'s automatic-reversal rule applies. *McFarland v. Yukins*, 356 F.3d 688, 701 (6th Cir. 2004) (holding that the *Holloway* automatic-reversal rule does not apply unless defendant objected, and explaining that this rule exists to protect the interests of defendants in choosing their counsel while also "ensuring that the defendant cannot have it both ways by asking for reversal or habeas corpus on the basis of representation that he or she acceded to during trial").

Collins did not just fail to object to having Ranke as her counsel; she affirmatively fought the government's motion to disqualify her attorney. Accordingly, we find that the *Holloway* automatic-reversal rule does not apply here.

B.

Although the automatic-reversal rule does not apply, this court still reviews for abuse of discretion a district court's decision whether to disqualify an attorney. *United States v. Brock*, 501 F.3d 762, 771 (6th Cir. 2007). However, this court has also held that a defendant "may make a knowing, intelligent, and voluntary waiver of her right to conflict-free counsel," and a defendant having done so "may not now invoke the constitutional right that she chose to waive." *United States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir. 1991).

The district court held a hearing and issued an order regarding the potential conflict. In his order, the district judge explained, among other things, that "to the extent that a potential conflict of interest could present itself, [Collins] waived, on-the-record, such a conflict." Collins was informed of the potential conflict by the government's motion, was further informed of the potential through a hearing, and—despite these events—still actively fought to keep her counsel. When she waived her right to conflict-free counsel, that waiver was knowing, intelligent, and voluntary. Moreover, Collins made the waiver despite a government motion that forewarned of the possibility of Collins's later argument that a conflict entitles her to relief. To grant Collins a new trial now after she so affirmatively waived her right—a waiver made knowing the government's fears of precisely the appeal now before this court—would run openly contrary to the *McFarland* ruling, which aimed to prevent defendants from "hav[ing] it both ways." *McFarland*, 356 F.3d at 701. Accordingly, we find that Collins made a knowing, intelligent, and voluntary waiver of her right to conflict-free counsel.

We note, however, that even a knowing waiver can be deficient. When a court is aware of an actual conflict, it may choose not "'to tolerate an inadequate representation of a defendant.'" *Wheat v. United States*, 486 U.S. 153, 162 (1988) (quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978)). Here, however, we find there is no evidence that the district court was aware of an actual conflict. The district court specifically held that "[g]iven these waivers, the Court cannot say that the potential conflict is so great that no rational defendant would waive it." This was a sensible holding: Collins was married to Gunter, she had hired Ranke three times before and trusted her, and her defense did not depend on implicating Gunter. While implicating Gunter was one possible defense, it was not required or even necessarily the best defense, and it is fully rational for a married defendant to wish not to implicate her spouse. The district court did not abuse its discretion by permitting Collins to waive her right.

### III.

Collins's second argument is that she was denied effective assistance of counsel. She makes two primary claims. Her first claim centers on the alleged attorney conflict of interest. Collins argues that her attorney should have called witnesses and brought up past convictions to show that Gunter had stolen the weapons from her, or, in the alternative, should have encouraged a guilty plea in exchange for implicating Gunter. Collins states that her attorney did not, and could not, provide these defenses because of the actual conflict she alleges regarding the representation of Gunter. Collins's second claim is that her attorney's cross-examination of Arone—and failure to object to his testimony regarding Collins's truthfulness—constituted prejudicial error great enough to raise ineffective assistance concerns.

Neither of these claims is sufficiently developed for consideration at this time. This court's general practice is "not to consider ineffective assistance claims on direct appeal because they are better left to a post-conviction motion to vacate under 28 U.S.C. § 2255." *United States v. Franklin*, 415 F.3d 537, 555 (6th Cir. 2005) (citing *Massaro v. United States*, 538 U.S. 500 (2003)); *see also United States v. Goodlett*, 3 F.3d 976, 980 (6th Cir. 1993) ("[T]his court will not review [such claims] on direct appeal because the record has not been sufficiently developed for assessing the merits of the allegation."). The rule "stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues." *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997) (internal citation omitted). The Supreme Court has held similarly that the district court is "the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." *Massaro*, 538 U.S. at 505. The exception to this general rule occurs when factual concerns are not present. *Franklin*, 415 F.3d at 555–56 ("[T]here is a narrow exception to the general rule that ineffective assistance of claims may not be considered on direct appeal—namely, 'when the existing record is adequate to assess properly the merits of the claim.'" (quoting *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998))).

The existing record in this case is not adequate to assess the merits of Collins's ineffective assistance claims. Collins's attorney-conflict claims require fact-finding to determine prejudice. For example, to make an ineffective assistance claim Collins must "show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro*, 538 U.S. at 505. Here the record shows that the strategy of Collins's counsel included working with Gunter, who

served as a defense witness and waived potential attorney conflicts. If Collins's attorney had decided to place the blame on Gunter, instead of working with him, then her strategy would have been wholly different. It is not *ipso facto* irrational to choose to work with, rather than against, a key witness. Because the record is not sufficiently developed to determine whether Ranke's strategy was reasonable, the attorney-conflict claims are best left to § 2255 proceedings.

Collins's claim regarding Arone's testimony also requires fact-finding to determine prejudice. Collins notes that her attorney's cross-examination, questioning Arone's truthfulness, opened the door for the introduction of evidence of her prior gun purchases. But whether this approach caused Collins prejudice is not established conclusively from the record. For example, the government emphasizes that the jury acquitted Collins on one of the four counts. If anything, the government argues, the acquittal shows that the jury understood its limiting instruction and acted properly. Because whether Collins's attorney's actions in regards to Arone were prejudicial is undetermined at this time, the matter should be left for further fact-finding in § 2255 proceedings.

For the foregoing reasons, we decline to address Collins's ineffective assistance claims at this time.

## IV.

Collins's third argument is that the district court committed constitutional error, depriving her of the right to due process and a fair trial, when it allowed the government to introduce evidence of prior bad acts. Collins argues that Arone's testimony about her 2000 and 2001 purchases of Hi-Point pistols "usurped the role of the jury as fact finder" because Arone's opinion about Collins's truthfulness, coupled with evidence of prior bad acts tending to show her to be untruthful, denied the

jury of its ability to determine whether Collins was truthful. Moreover, Collins asserts that the evidence was "enormously prejudicial, and not properly admissible under [Federal Rules of Evidence] 403 and 404."

Collins cites *Old Chief v. United States* for the proposition that admission of a prior bad act causes unfair prejudice if it "lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." 519 U.S. 172, 180 (1997). Collins argues that admission of the 2000 and 2001 purchases gave the jury a general impression of her bad character and may have led the jury to convict for crimes other than those charged. She states that the prior bad acts "certainly contributed to the verdict in this case."

Neither party disagrees that Collins's prior bad acts were, initially, properly excluded under Federal Rule of Evidence 404. The question is whether the prior bad acts were admissible under Federal Rules of Evidence 403 and 404 after Collins's attorney had cross-examined Arone.[3]

This court reviews a district court's admission or exclusion of evidence under an abuse-of-discretion standard. *United States v. Martinez*, 588 F.3d 301, 309 (6th Cir. 2009); *see also United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) ("The district court's Rule 403 balancing is an evidentiary ruling that we may review only for an abuse of discretion."). The court reviews *de novo*

---

[3] The district court permitted the prior acts evidence under Rule 403. At trial, the parties phrased this matter as a Rule 404(b) motion. The government asked to renew its Rule 404(b) motion, and the defense responded with the same objections it had made to the government's initial 404(b) motion *in limine*. However, the district judge explained, "the testimony . . . is not being offered . . . as other act evidence. The evidence is being offered strictly to explain why the government's witness believed that Ms. Collins was untruthful during the course of [Arone's] second interview . . . ."

15

a district court's conclusions of law and reviews for clear error a district court's underlying factual determinations. *Martinez*, 588 F.3d at 309 (citing *United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005)). Rule 403 challenges are reviewed for abuse of discretion in which the court "view[s] the evidence in the light most favorable to the government by maximizing the probative value of the evidence and minimizing its potential prejudice." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). The prejudice weighed is "the *unfair* prejudice caused by admission of the evidence. Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *Id.* (citing *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir. 1994)).

Following cross-examination of Arone, the district court concluded that Collins's attorney's questions "put [Arone] in a position on cross-examination saying . . . he had no evidence to support his belief that [Collins] was lying about these weapons when in fact he certainly had evidence that she was lying." The district court found that because defense counsel had put the matter of why Arone went back to interview Collins a second time at issue, and because the evidence of the 2000 and 2001 purchases explains Arone's motive for returning and belief as to why Collins was lying, those facts were now exactly at issue. As the court put it, "[I]t's unfair for you to be permitted—and I've allowed it—to cross-examine [Arone] as to his reasons for believing that [Collins is] lying, and then for the Court to exclude the very basis and reasons why he believes that to be the case." The court thus found the prior acts admissible for a proper purpose under Rule 404(b), namely to explain Arone's actions and motivations.

16

Because the record shows that Collins's attorney had cross-examined Arone at length regarding whether Collins had lied and why he had returned, it was not clear error for the district court to find that defense counsel opened the door for the 2000 and 2001 evidence. Once the door was opened, the evidence was admissible for a proper purpose.

Although admissible under Rule 404(b), the prior-bad-acts evidence must also be admissible under Rule 403. This court reviews Rule 403 rulings by maximizing the probative value of the evidence and minimizing its potential prejudice. *Sanders*, 95 F.3d at 453. The prior bad acts evidence is probative for the reasons enunciated above. Unfair prejudice occurs when evidence is introduced which "'tends to suggest decision on an improper basis.'" *Bonds*, 12 F.3d at 567 (quoting *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988)). In its ruling on the government's initial Rule 404(b) motion, the district court stated that "the potential prejudicial impact of this evidence is quite high" because "[t]he Government seeks to paint a picture of [Collins] as a woman who routinely purchases firearms and then provides them to convicted felons." The government argues that Collins's acquittal on the second count shows that the prior-bad-acts evidence did not lead the jury to make a decision on an improper basis. The second count related to the two Hi-Points Collins purchased, and the prior-bad-acts evidence also regarded the purchase of Hi-Points in 2000 and 2001. The fact that the jury acquitted Collins of the false-statement charge relating to the Hi-Points weapons does show that the jury considered the charges against Collins individually but offers nothing with respect to how the jury regarded Arone's testimony about his reason for return. On the other hand, Collins was convicted of conveying a Hi-Point firearm to Gunter—the exact prior bad act that occurred in 2000.

17

Nevertheless, because this court reviews evidentiary rulings for abuse of discretion, we find that the district court did not abuse its discretion in its of weighing of the evidence's probative value and potential prejudice and therefore in its decision to admit evidence of Collins's 2000 and 2001 purchases.

V.

Collins's final claim is that the district court's sentence of forty-eight months, when the Guidelines range was fifteen to twenty-one months, was unreasonable under 18 U.S.C. § 3553. "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007). That standard includes both a procedural and a substantive component. *Id.; see also United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). Procedural abuse of discretion includes

> significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*Gall*, 552 U.S. at 51. Substantive reasonableness, also reviewed under the abuse-of-discretion standard, "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* A sentence within the Guidelines range may be presumed reasonable, but "if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness." *Id.* Moreover, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal

18

of the district court." *Id.* The court applies such a deferential standard because district courts are in a better position to "find facts and judge their import" and because district courts "have an institutional advantage over appellate courts . . . as they see so many more . . . sentences than appellate courts do." *Id.* at 51–52 (internal quotations omitted).

Collins argues that the district court violated the substantive component by imposing a sentence above the Guidelines. Collins makes three arguments. First, "[t]here is nothing in the record that suggests [she] would be likely to re-offend." Second, there is an "unwarranted disparity" in sentencing because Collins's sentence was so much longer than Gunter's sentence for gun possession. Third, it was clear error for the district court to impute the damage from guns crimes across Cleveland to Collins and impose a harsher sentence on her than on a criminal using a weapon.

None of Collins's arguments demonstrates that the sentence is unreasonable. First, there is evidence to support a finding that Collins might reoffend or otherwise qualify for a harsher sentence under § 3553(a). The written sentencing memorandum and sentencing hearing transcript make clear that the district court found Collins's testimony on numerous fronts—that she bought the AK-47s for investment purposes, that she lost them, that she stored them in her home despite having four children—"beyond belief." Indeed, at the sentencing hearing, the district judge specifically noted that "[Collins] knows where those guns went. She just simply refuses to advise the government." This distrust led the district court to state at the sentencing hearing, "I have no doubt from listening to her testimony, her, quite frankly, false testimony, that she would be back at it again in short order." In the written memorandum, the judge concluded: "From her testimony during trial, it is apparent that Defendant fails entirely to recognize the seriousness of her offense." These findings

show that there is some evidence suggesting that Collins is likely to reoffend, that a harsh sentence is needed to protect the public from further crimes, and that a harsher sentence is needed to reflect the seriousness of the offense and promote Collins's respect for the law. The *Gall* procedural requirement is merely that the sentencing court consider § 3553(a) factors, which the district court did. Even if we disagreed with the district court's substantive assessment of those factors, we do not think the district court abused its discretion.

Collins's second argument, that there is an unwarranted disparity between her sentence and Gunter's, is also without merit. Gunter was convicted and sentenced in a state court. But this court has held, "[Section] 3553(a)(6)'s admonition that sentencing courts avoid unwarranted disparities is directed only at federal court to federal court disparities, not those that may exist between federal and state courts." *United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007). Per *Malone*, the fact that Collins received a different sentence, for a different crime, tried by a federal instead of a state court, in no way violates the disparity concerns of § 3553(a)(6).

Collins's third argument, that the district court imputed gun crimes across Cleveland to her, is contradicted by the record. The written memorandum specifically noted that Collins was not responsible for the crimes in the area committed with firearms. The memorandum did fault Collins for one gun crime: "One of the guns purchased by the Defendant and provided to others was used in a crime that resulted in charges of felonious assault and attempted murder. As such, there is no question that Defendant is a contributor to the types of statistics detailed above." But the record states that the district court did not impute guilt for all gun crimes in Cleveland to Collins; rather, the district court explained in its memorandum why it considered Collins's crime to be so severe and

worthy of a harsher sentence. Such consideration of the "totality of the circumstances" in Cleveland

is substantively reasonable and does not constitute an abuse of discretion meriting reversal.

VI.

For the foregoing reasons, we affirm the district court.