RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0209P (6th Cir.)
File Name: 04a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*                                        No. 03-3134

KASHIEMA ALSTON,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00054—Solomon Oliver, Jr., District Judge.

Submitted: June 10, 2004

Decided and Filed: July 7, 2004

Before: MARTIN and SUTTON, Circuit Judges;
WILLIAMS, Senior District Judge.*

———————————

*The Honorable Glen M. Williams, Senior United States District Judge for the Western District of Virginia, sitting by designation.

---

———————————

## COUNSEL

**ON BRIEF:** Wesley A. Dumas, Sr., Cleveland, Ohio, for Appellant. David P. Folmar, Jr., ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Circuit Judge. Kashiema Alston was convicted by a jury of possession with intent to distribute cocaine under 21 U.S.C. § 841(a)(1)(B). On appeal, Ms. Alston asserts that the district court erred in denying her motion to suppress because she was illegally seized in violation of her rights under the Fourth Amendment. Ms. Alston also argues that the district court erred in denying her proposed jury instruction, stating that the jury should not give more credibility to the testimony of law enforcement officers than other witnesses solely because of their status. We hold that the encounter between Ms. Alston and the officers did not rise to the level of a seizure for purposes of the Fourth Amendment. Thus, we affirm the district court's denial of the motion to suppress. We also hold that the district court did not abuse its discretion in denying Ms. Alston's last-minute request for a jury instruction, and we affirm the judgment of the district court.

I.

Ms. Alston was arrested on January 14, 2002, in Cleveland International Airport after her carry-on luggage was searched, and officers found cocaine inside the lining of a coat contained in her luggage. Ms. Alston was traveling from Los Angeles, California, to Hartford, Connecticut, her hometown. Officers in Cleveland received information from a drug task

force in Houston, Texas, stating that Ms. Alston was traveling from Los Angeles to Hartford and that the circumstances surrounding the purchase of her ticket indicated that she might be involved in illegal drug transportation.

An investigation by officers in Cleveland revealed that Ms. Alston's ticket was purchased by Robert Taylor, a man who produced no identification and paid the fare in cash. Ms. Alston departed on January 11, 2002, and was scheduled to return on January 20, 2002. Late in the evening on January 13, 2002, the return ticket was changed to depart on January 14, 2002. The fee for this change was paid in cash. The investigation revealed that Ms. Alston was traveling alone and that she checked no baggage in Los Angeles. The officers learned that her plane was scheduled to land in Cleveland, where she would change planes, and that she was seated near the center of the plane arriving from Los Angeles.

Officers Brian Johnston, Debra Harrison, and Kirk Johns were assigned to locate Ms. Alston when she landed in Cleveland. After approaching one individual and determining that she was not Ms. Alston, the officers observed Ms. Alston deplane. Although they did not know her specific age or have a physical description of her, the officers were able to locate her as a single female traveler in the middle of the plane. The officers observed her as she left her gate, purchased a cup of coffee, and purchased food. Ms. Alston then approached a bank of telephones. The three officers, who were all dressed in plain clothes and not showing weapons, decided to approach her before she made a telephone call.

Officer Johnston approached Ms. Alston, and after showing her his identification, he told her that he was a drug-task-force officer and asked if he could speak with her. Office Johnston testified at the suppression hearing that he told Ms. Alston that she was not under arrest and was free to leave at anytime. Ms. Alston initially consented, but she went to ask the gate agent a question regarding her flight, leaving her carry-on luggage at the phone bank. Ms. Alston returned, and Officer

Johnston again asked if he could speak with her. She again consented, and Officer Johnston asked her name and asked for identification. Ms. Alston produced identification, and after a brief inspection, Officer Johnston returned it to her. Then, Officer Johnston asked to inspect her boarding pass. Again, Ms. Alston produced the boarding pass, and after a brief inspection, Officer Johnston returned it. During this time, Officer Harrison stood a distance behind Officer Johnston, and Officer Johns pretended to be a traveler talking on the telephone.

Officer Johnston then asked if he could have permission to search her carry-on baggage. Again, Ms. Alston consented. Officer Harrison approached in order to search the bag and found that it was sealed by a lock. Officer Johnston asked Ms. Alston if she had a key, and she said no. Officer Harrison proceeded to open the bag by separating the zipper. During the search of Ms. Alston's luggage, Officer Harrison picked up a coat and noticed that it was quite heavy. She began to pat down the coat and felt what she believed to be contraband in the lining of the coat. Officer Johns then approached and offered Officer Harrison a knife with which to cut the lining of the coat. After Officer Harrison retrieved packets of cocaine from the lining of the coat, Ms. Alston was arrested.

After Ms. Alston was indicted, she filed a motion to suppress, claiming that the officers illegally seized her and that the evidence obtained from the seizure should be suppressed. The district court held a suppression hearing in which the motion to suppress was denied orally. A jury found Ms. Alston guilty, and she was sentenced to sixty-three months imprisonment.

II.

This Court reviews a district court's factual findings in a suppression hearing for clear error and reviews a district

court's conclusions of law *de novo*. *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000).

Ms. Alston argues that the encounter with the officers on January 14, 2002, amounted to a seizure, and that the seizure was unconstitutional because the officers had neither reasonable suspicion nor probable cause to detain her. Because we believe that a reasonable person in Ms. Alston's circumstances would have felt free to leave, we hold that Ms. Alston was not seized for purposes of the Fourth Amendment. Further, because Ms. Alston does not challenge the district court's holding that her consent to search was freely and voluntarily given, we hold that the evidence obtained by the officers was properly admitted by the district court.

"Under the Fourth Amendment, there are three types of permissible encounters between police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion;' and arrests which must be based on probable cause." *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994). The first of these encounters is permissible without any particularized suspicion because no seizure has occurred for purposes of the Fourth Amendment. A seizure occurs when "under the totality of the circumstances, a reasonable person would have believed that he or she was not free to walk away." *United States v. Saperstein*, 723 F.2d 1221, 1225 (6th Cir. 1983).

This Court has been asked to address this issue many times, and while the facts of each case are different, we do not see anything in this case that would make us think that a reasonable person in Ms. Alston's circumstances would not have felt free to terminate the encounter. Ms. Alston was approached by officers in plain clothes and asked if she would speak to them. After responding that she would, Officer Johnston asked for her identification and boarding pass.

Officer Johnston spoke in a non-threatening manner and did not display a weapon. Furthermore, the atmosphere was not police dominated. Although there were three officers on the scene, only Officer Johnston approached the defendant while the other officers remained some distance away. Officer Johnston testified that he told Ms. Alston she was free to walk away, but Ms. Alston did not choose to do so. The encounter was very brief, and Ms. Alston was not asked to accompany the officers to a different location. Nothing in the record suggests that a reasonable person would not have felt free to leave. The district court did not provide us findings of fact, and cases like this generally turn on credibility determinations made by the district judge at the suppression hearing. However, even viewing the facts in the light most favorable to Ms. Alston, we find nothing that would lead us to conclude that a reasonable person would not have felt free to leave. Therefore, there was no seizure for purposes of the Fourth Amendment.

Defendant's brief does not challenge the district court's holding that Ms. Alston's consent to search was voluntary, and, thus, we will not review this finding.

### III.

Ms. Alston alleges that the district court erred in not instructing the jury that it should not lend more credibility to the testimony of law enforcement officials solely because of their status. "We will reverse a conviction for failure to give a requested jury instruction only when: (1) the requested instruction is a correct statement of the law; (2) the requested instruction is not substantially covered by other delivered instructions; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. Chesney*, 86 F.3d 564, 573 (6th Cir. 1996).

The district court committed no error in denying Ms. Alston's proposed instruction on witness credibility. The jury was given lengthy instructions on considerations to make

when determining witness credibility.  A portion of these instructions told the jurors to "[a]sk yourself if the witness had any relationship to the government or the defendant, or anything to gain or lose from the case, that might influence the witness's testimony.  Ask yourself if the witness had any bias or prejudice or reason for testifying that might cause the witness to lie or to slant their testimony in favor of one side or the other."  App. 244.  In addition, the district court instructed the jury that "the instructions . . . apply to each witness, regardless of who they are or which side may have called them."  We believe the above instruction invites jurors to think about whether witnesses, such as the officers, may be biased because of their relationship with the government. Ms. Alston's concern that the officers' testimony would be given greater deference because of their status was adequately addressed by this instruction and other jury instructions as a whole, and the district court did not abuse its discretion.

For these reasons, we AFFIRM the judgment of the district court.