NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0265n.06

No. 10-2248

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Mar 09, 2012***

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
)
v. ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
DONALD RAY BURROUGHS, ) EASTERN DISTRICT OF MICHIGAN
)
    Defendant-Appellant. )
) OPINION

_____

Before: **GIBBONS, GRIFFIN, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge**. Defendant-Appellant Donald Ray

Burroughs appeals his conviction and sentence for being a felon in possession of a firearm and

ammunition in violation of 18 U.S.C. § 922(g). After entry of judgment on the jury's verdict, the

district court sentenced Burroughs to the mandatory minimum of 180 months' imprisonment.

Burroughs makes numerous arguments on appeal, including challenges to the district court's jury

instructions, the denial of his right to effective assistance of counsel, prosecutorial misconduct, and

the sufficiency of the evidence to support his conviction. For the reasons set forth herein, we

**AFFIRM**.

## I. BACKGROUND

On October 14, 2009, Bernard Balmes reported to police that he had observed someone

handling a firearm near an "eviction pile" in front of the Reed Manor apartment complex in Jackson

County, Michigan.[1] Balmes described the subject as a black male wearing a blue coat, standing approximately five feet, ten inches tall, and weighing 180 pounds. Balmes heard the subject make remarks suggesting he had found numerous handguns in the pile. Officer Holly Rose, a road patrol officer with the Jackson Police Department, responded to the call. When Officer Rose arrived, she observed Burroughs, who matched the subject description that Balmes gave police, standing beside a desk in the pile holding a book. As Officer Rose approached Burroughs, she told him that she needed to speak to him and instructed him to put the book down and step away from the desk. After placing the book on the desk, Burroughs turned away from Officer Rose so that she could no longer see his hands and made a motion towards his jacket. Officer Rose observed Burroughs throw a dark-colored object to the ground.

Officer Rose drew her weapon and took cover behind a nearby tree. She instructed Burroughs at gun point to show his hands, step towards the sidewalk, and keep his hands in the air. As Burroughs began walking towards Officer Rose, he proceeded to remove the hat, gloves, and vest he was wearing despite Officer Rose's instructions to keep his hands in the air. After removing the hat, gloves, and vest, Burroughs immediately dropped to his knees and placed his hands on his head. Officer Rose continued to hold Burroughs at gun point while she awaited assistance. During that time, Burroughs occasionally took his hands off his head and put them around his waist area.

---

[1] The parties use the term "eviction pile" throughout the pleadings to refer to a pile of household goods, furniture, and personal effects that had been removed from the apartment of an evicted tenant at the Reed Manor apartments.

After other officers arrived on the scene and handcuffed Burroughs, Officer Rose went to the area near the desk where she had seen Burroughs throw a dark-colored object. There she found a black handgun in a brown holster lying on the ground. After securing the gun in her vehicle, Officer Rose returned to the area where Burroughs remained kneeling on the ground.

Officer Paul Cushman and another officer stood Burroughs up and informed him that they needed to search him from the waist down. Cushman had trouble separating Burroughs's legs to perform the search, and Burroughs was initially uncooperative with Cushman's instructions to spread his legs. When Burroughs finally complied, Cushman heard something fall to the ground. When he looked down, Cushman saw a second gun lying on the ground between Burroughs's legs. Cushman asked Burroughs if he had any other guns, to which Burroughs replied that the gun on the ground did not belong to him and that he must have kneeled on top of it when he initially dropped to his knees. Burroughs indicated that there were more guns in the eviction pile. Officers inspected the pile and found the frame of another revolver.

After all of the weapons had been placed into Officer Rose's vehicle, Officer Rose inspected the vest that Burroughs had been wearing. From a pocket in the vest, she recovered a video game case that held four live .22 caliber bullets. Meanwhile, Officer Cushman ran a criminal history check on Burroughs, which revealed that he had prior felony convictions. Burroughs also acknowledged his prior felony record. At that point, Officer Rose placed Burroughs under arrest for being a felon in possession of a firearm.

On December 17, 2009, a grand jury returned an indictment charging Burroughs in Count I of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and in Count II of

being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). On January 21,

2010, the grand jury returned a superceding indictment amending Count I to reflect Burroughs's

three prior serious felony offense convictions. After a two-day trial, a jury convicted Burroughs of

both counts. The district court sentenced him to 180 months' imprisonment, and Burroughs timely

appealed.

## II. ANALYSIS

### A. Jury Instructions

Where counsel raised no objection to the jury charge at trial, we review for plain error.

*United States v. Dedman*, 527 F.3d 577, 600 (6th Cir. 2008). Under the plain error standard, a

litigant must demonstrate that: "(1) there is an 'error'; (2) the error is clear or obvious, rather than

subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the

ordinary case means it affected the outcome of the district court proceedings; and (4) the error

seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States*

*v. Carradine*, 621 F.3d 575, 579 (6th Cir. 2010).

Before trial, the parties stipulated that Burroughs had been previously convicted of a crime

punishable by imprisonment for more than one year and that the specified firearms and ammunition

had traveled in interstate commerce. Thus, the prosecution needed only to prove that Burroughs

knowingly possessed the firearms and ammunition described in the indictment.[2]

---

[2] "Knowing" possession is not an element of the offenses enumerated in 18 U.S.C. §§ 922(g) or 924(e). Nevertheless, the superceding indictment charged that Burroughs did "knowingly possess" the firearms and ammunition specified therein. The Government appears not to contest that it was required to prove the knowledge element charged in the indictment.

As to the "knowingly" element, the court charged the jury as follows:

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident. You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

Burroughs argues on appeal that this instruction was erroneous "because it lowers the burden of proof permitting a jury to convict on an inference after finding negligence." Burroughs goes on to argue that "where the mens rea required for a conviction is 'knowingly,' a deliberate ignorance instruction creates a risk that a jury might convict on the basis of negligence or stupidity or that the defendant should have been aware that the conduct was illegal."

Burroughs's argument is without merit. The district court expressly instructed the jury that it could not find knowledge on the basis of a defendant's negligence, carelessness, or foolishness. Moreover, neither party advanced a theory of the case that relied on, or even suggested, defendant's deliberate ignorance. Burroughs's counsel did not argue that Burroughs never "knowingly" handled the firearms; instead, he argued that even if Burroughs handled the firearms, he did not intend to "possess" them.

Specifically, Burroughs's counsel argued, "You have to ask yourself how many times in your life have you picked something up or looked at something and would you think that that would mean you had possession of it even though you never intended to actually do anything with it." He later argued:

> So what this case really comes down to is what do you think possession is? Is finding a pen on the court steps and picking it up to look at it and . . . while I'm looking to see what it is, being approached by the U.S. Marshal's Office or a Detroit police officer who [is] going by asking what do you have there? Is that enough? Is going to the store and picking up a shirt, a blouse, a pair of pants, a sweater and looking at it thinking maybe you want to buy it, enough to be in possession?

Clearly, counsel's argument to the jury portrays a different scenario than, for instance, a passenger in a car who does not "knowingly possess" a gun that, unbeknownst to him, is under his seat. Instead, counsel argued that Burroughs did not know that his mere handling of the guns amounted to possession. But as the jury instructions also made clear, the prosecution was not required to prove that Burroughs knew it was illegal for him to handle firearms (although the prosecution offered direct evidence of this, as well). It was only required to prove that Burroughs voluntarily and intentionally, as opposed to accidentally or mistakenly, handled the firearms.

It was not plain error for the district court to instruct the jury on deliberate ignorance. The prosecution offered ample evidence, both direct and circumstantial, of Burroughs's *actual* knowledge. In light of that evidence, any error in the deliberate ignorance instruction, if any, was harmless.

### B. Ineffective Assistance of Counsel

We generally do not consider claims of ineffective assistance of counsel raised for the first time on direct appeal. *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010). Rather, such claims are properly raised in a post-conviction proceeding brought under 28 U.S.C. § 2255. *Id.* This allows the parties an opportunity to develop an adequate record on the issue from which the reviewing court is capable of arriving at an informed decision. *Id.* (quoting *United States v. Rahal*,

191 F.3d 642, 645 (6th Cir. 1999)). Although an exception to this rule exists where the record is sufficiently developed to support the claim, conclusory assertions of ineffective assistance will not suffice. *United States v. Crosgrove*, 637 F.3d 646, 663 (6th Cir. 2011).

Burroughs's ineffective assistance of counsel claim requires a fact-specific examination of trial counsel's alleged performance deficiencies. Burroughs has not explained how the record is sufficiently developed to support his argument, and error is not apparent from the record. Thus, there is no justification for departing from the court's established practice of deferring consideration of such claims to a proceeding properly filed under 28 U.S.C. § 2255. *See United States v. Hunter*, 558 F.3d 495, 508 (6th Cir. 2009); *United States v. Gonzalez*, 501 F.3d 630, 644 (6th Cir. 2007). We find Burroughs's claim premature and decline to address the merits.

## C. Prosecutorial Misconduct

Where defense counsel lodged no objection at trial to the statements or conduct of the prosecutor, our review is for plain error. *United States v. Carroll*, 26 F.3d 1380, 1383 (6th Cir. 1994). In reviewing claims of prosecutorial misconduct, we employ a two-step inquiry: first, we determine whether the challenged statements were in fact improper; and second, to the extent we find the statements improper, we consider whether they were so flagrant as to warrant reversal. *United States v. Wells*, 623 F.3d 332, 337-38 (6th Cir. 2010). The test for "flagrancy" is itself comprised of four factors: "(1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused." *Id.* at 338 (quoting *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008)). Under

plain error review, relief may be granted only if the prosecutorial misconduct was "exceptionally flagrant." *Id.* (quoting *Girts v. Yanai*, 501 F.3d 743, 759 (6th Cir. 2007)).

### 1. Allegation that Prosecution Called for Jury to Convict Based on Speculation

Burroughs's first allegation of prosecutorial misconduct is that the prosecutor asked the jury to speculate as to what happened to the vest he was wearing at the time he first encountered Officer Rose. This was improper, according to Burroughs, because it "impl[ies] that the Defendant got rid of the vest because he had a guilty conscience."

Officer Rose discovered four rounds of ammunition in the pocket of the vest that Burroughs was wearing. Officer Rose observed Burroughs remove the vest and place it on the ground near the eviction pile. After searching the vest and finding the ammunition, the vest was taken to the jail with Burroughs. At the police station, Burroughs denied that the vest belonged to him. Officer Rose testified that she did not initially think the vest was evidence, and that she last saw the vest in Burroughs's possession in the booking area of the jail.

On October 28, 2009, the prosecutor's office contacted Officer Rose and indicated it had a search warrant to go to the jail to retrieve Burroughs's vest. When someone went to the jail, however, Burroughs no longer had the vest in his possession. Neither the police nor the prosecutor were able to ascertain what became of the vest. At trial, the prosecutor argued to the jury:

> The defendant was permitted to keep [the vest]. The defendant remained in possession of the vest. The defendant was left with the vest. He was put in a tank with a number of other inmates and they were free to interact with each other. It's just as likely that he gave the vest to somebody else. He knows he's in trouble because he's in jail and he knows the ammunition was found in the vest.

Burroughs argues that the prosecutor's "use of the term 'likely' is a clear sign that the prosecution was calling for speculation to make out its case." He also characterizes this as "speculative testimony" and contends that "[t]he argument was not a fair inference because it was not based on actual facts." According to Burroughs, "[t]his improper conduct by the prosecution lessened the burden of proof thereby denying a fair trial to the defendant."

The prosecutor's statement about what might have happened to the vest was not improper. First, the prosecutor's argument is not "testimony," and the jury was explicitly instructed as such. Moreover, to the extent the prosecutor's statement can be construed as asking the jury to convict based on speculation, the district court also explicitly instructed the jury "not [to] speculate about what a witness might have said or what an exhibit might have shown." Rather, the court admonished the jury to "[m]ake your decision based only on the evidence, as I have defined it here, and nothing else." Given this instruction, any error in the prosecutor's statement was harmless.

### 2. Allegation that Prosecution Impugned Defense Counsel

Burroughs also asserts that the prosecutor denigrated defense counsel in her closing argument, causing the jury to be unfairly suspicious of what defense counsel said. This allegation is wholly without merit.

In closing, the prosecutor argued that Burroughs possessed both of the firearms and the ammunition and characterized "the rest of it" as "excuses and red herrings." These statements did not denigrate defense counsel. Rather, they highlighted the most damning evidence against Burroughs—the evidence that he in fact handled the firearms—and argued that all of the defense's explanations about *why* Burroughs handled them were irrelevant. A prosecutor may argue all

reasonable inferences that may be drawn from the evidence admitted at trial as they relate to the prosecutor's case. *See United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999). The prosecutor's arguments were reasonable arguments designed to persuade the jury to believe the prosecutor's theory of the case. They did not improperly disparage defense counsel.

### 3. Allegation that Prosecution Shifted the Burden of Proof and Commented on Defendant's Right to Remain Silent

Burroughs contends that the prosecutor made three comments that improperly called attention to Burroughs's exercise of his right to remain silent and that improperly shifted the burden of proof to the defense. It is settled law that a defendant's post-arrest silence may not be used against him at trial to imply his guilt. *See Doyle v. Ohio*, 426 U.S. 610, 611 (1976). Pre-arrest silence also may not be introduced as substantive evidence of guilt. *United States v. Carter*, 45 F. App'x 339, 346 (6th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993)). "However, a conviction will not be overturned without viewing the prosecutor's comments in the context of the entire trial." *Id.* (citing *United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996)).

Burroughs cites the following as examples of prosecutorial misconduct:

[From prosecution's opening statement]: After he's taken into custody the entire situation escalates. There is very friendly conversation between the officers and the defendant. The defendant initiates some of that conversation. You will see this is not a confrontational environment at this point. *The defendant at this point had not told the officers that he has a small semiautomatic .32 caliber pistol in between his legs*. (emphasis added).

[From prosecution's rebuttal argument]: The argument about turning [the guns] in and what his intentions [were] are really irrelevant. But the argument that this letter[,] although he wants you to accept portions of his history[,] were never related to any officer involved in his case, even his probation officer. . . .

- 10 -

> [From rebuttal, in regard to Officer Rose's interview with Burroughs]: And you haven't been given [any] evidence to question her credibility about the content of that interview.

Burroughs argues generally, and correctly, that he has no duty to offer evidence, that he has the right to remain silent, and that he has the right to put the government to its proof. He concludes by stating that in making the above statements "the prosecutor was implying to the jury that the defendant had a burden and was commenting on the exercise of his Fifth Amendment right." We will examine each challenged statement in turn.

As to the first of the challenged statements, Burroughs's argument fails under the rationale set forth in *Anderson v. Charles*, 447 U.S. 404 (1980). The prosecutor could not have improperly commented on Burroughs's right to remain silent because, just as in *Anderson*, Burroughs did not invoke his right to remain silent. Instead, he voluntarily elected to engage in conversation with officers both before and after receiving *Miranda* warnings. This included speaking to officers about the presence of guns in the eviction pile, and Burroughs's alleged concern for public safety with regard to the presence of guns in close proximity to a school. The prosecution, in commenting on Burroughs's failure to alert officers promptly that he had a gun in his waistband, was not attempting to impute meaning to silence as prohibited under *Doyle*. After all, "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson*, 447 U.S. at 408. The prosecution was pointing out an inconsistency between Burroughs's conduct and his alleged reason for that conduct. Simply put, the rationale of *Doyle*—that the prosecution may not imply that a defendant's exercise of his Fifth Amendment right to remain silent is suggestive of his guilt—is

inapposite in cases where the defendant elects not to exercise his Fifth Amendment right. Therefore, the prosecutor's statement, considered in context, was not improper.

As to the second challenged statement, we are unable to discern the actual meaning that the prosecutor intended to convey in making the statement, let alone any hidden or implied meaning. Burroughs's brief does not endeavor to explain the meaning of the statement or how or why it was improper, and error is not apparent on the face of the record. Because conclusory allegations of impropriety are insufficient to warrant reversal, we consider Burroughs's challenge to the second statement waived.

As to the third challenged statement—the prosecutor's statement to the jury that it had been given "no evidence to question [Officer Rose's] credibility about the content of the interview"—Burroughs argues that it improperly suggests to the jury that he had a duty to offer evidence and that it was a comment on the exercise of his Fifth Amendment right in violation of *Griffin v. California*, 380 U.S. 609 (1965) (holding that neither a prosecutor nor a trial judge may comment upon a criminal defendant's failure to testify). We disagree.

First, the statement was not a direct reference to Burroughs's failure to testify because it "did not specifically state that Defendant did not testify or that he had not provided an alternative explanation." *Wells*, 623 F.3d at 338. Nor is the prosecutor's argument properly interpreted as an indirect comment on Burroughs's silence. In evaluating claims of improper indirect comments on a defendant's silence, we consider:

> (1) whether the comments were manifestly intended to reflect on the accused's silence or are of such a character that the jury would "naturally and necessarily" construe them as such; (2) whether the comments were isolated or extensive; (3)

whether there was otherwise overwhelming evidence of guilt; and (4) whether appropriate curative instructions were given.

*Id.* (quoting *Gonzalez*, 512 F.3d at 292-93).  As to this statement, we need not proceed beyond the first prong.

Without expressing "a personal opinion or belief regarding the truth or falsity of a witness's testimony," the prosecutor may argue that the jury should arrive at a particular conclusion based on the evidence.  *United States v. Henry*, 545 F.3d 367, 379 (6th Cir. 2008).  While "[g]eneral references to evidence as uncontradicted [are] . . . not recommended, [they] may not reflect on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence."  *Byrd v. Collins*, 209 F.3d 486, 534 (6th Cir. 2000) (quoting *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983)).  Even where the evidence in question could only have been contradicted by the defendant, we have declined to adopt a *per se* rule that such references are impermissible indirect comments on the defendant's failure to testify.  *Raper*, 706 F.2d at 165.  Instead, we conduct a "probing analysis of the context of the comments in order to determine whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."  *Id.* (internal citations omitted).

In order to analyze the challenged statement in context, it is necessary to consider relevant excerpts of the trial transcript.  Beginning with the jury charge, the following excerpts help us place the challenged statement in context:

> [From the court's charge to the jury]:  And ask yourself how believable the witness's testimony was in light of all the other evidence.  Was the witness's testimony supported or contradicted by other evidence that you found believable? . . . You have

heard testimony of law enforcement officials. The fact that a witness may be employed by the Government as a law enforcement official does not mean that his/her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his other testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

[From prosecutor's closing statement]: After Mr. Burroughs is taken to the county jail he's then interviewed by Officer Rose. And in the course of that interview he makes his own admissions. *So at this point you have the testimony of Mr. Balms* [sic]*, Officer Rose, Officer Cushman, Officer Ganzhorn.* Each of these individuals' own observations are enough to satisfy beyond a reasonable doubt the defendant was in possession of each firearm and the ammunition. . . . So each officer, each witness alone provided you with enough evidence to find the defendant guilty. But even if you don't want to stop there, you don't have to because the defendant admits it anyway. (emphasis added).

After he gets to the police station and he's at the jail, he is left in possession of his vest. He is interviewed by Officer Rose and in the course of that interview although he claimed that he pushed the firearm off the desk the first time which is inconsistent with Officer Rose's observations of what happened, he admits to the ammunition. He says only after Officer Rose purposes [sic] it, hey, what about the kids? I bet you picked up that ammunition because you didn't want the kids to find it. Yep, that's it. There you go. Yes, that is the reason why I did that. . . .

Then you get the unsolicited letter to his probation officer two weeks later from the county jail . . . where he says . . . I was standing over the two firearms, but I was only doing that because my intention was to turn them into the police. That's an admission, folks. This is an admission. He had these guns.

[From defense counsel's closing argument]: Well, the police officer is the one who suggested about the children. How do you know? Because she said so? Just because she said so? There's no video tape of this interview. You can take it for its word, you can do whatever you want.

[From prosecution's rebuttal]:  So if we're going to give any weight to the public safety argument he had plenty opportunity.  If you had found the gun in a trash pile and things are being applied to you, what is your logical reasonable response when an officer pulls up especially since you're interested in keeping it away from the kids, thank God you're here, you will not believe what I found. . . . She hears nothing, nothing like that.  Doesn't disclose that he had a firearm on him, doesn't disclose the ammunition.  But admits to the ammunition when Officer Rose gives him the excuse during the in-custody interview.  And you haven't been given no evidence to question her credibility about the content of that interview.

Viewed in context, the challenged statement was neither manifestly intended to reflect on Burroughs's failure to testify nor is it of such a character that the jury would "naturally and necessarily" construe it as such.  The statement did not expressly refer to Burroughs's failure to take the stand, and was offered only in rebuttal to the defense's suggestion that Officer Rose's testimony ought not be believed.  In his closing argument, defense counsel challenged the credibility of Officer Rose's testimony regarding her interview of Burroughs.  The prosecutor was free to respond by arguing that Officer Rose's testimony should be believed.  *See United States v. Boyd*, 640 F.3d 657, 671 (6th Cir. 2011); *United States v. Reid*, 625 F.3d 977, 985 (6th Cir. 2010).  Moreover, the prosecutor pointed out that it was not only the testimony of Rose, but also that of Bernard Balmes and Officers Cushman and Ganzhorn that supported the prosecution's theory of the case.  In other words, any one of these witnesses could have contradicted Rose or otherwise testified in such a way as to cast doubt on Rose's credibility.  This cuts against the likelihood that the prosecutor's remark was intended to or had the effect of calling attention to Burroughs's failure to testify.  In this context, a single, isolated remark pointing out that the defense offered no evidence to support a challenge to Officer Rose's credibility was not a violation of the *Griffin* principle.

### 4. Allegation that Prosecutor Offered Unsworn Evidence

Finally, Burroughs argues that the prosecutor's statement regarding the parties' fingerprint stipulation amounted to unsworn testimony, denying Burroughs a fair trial. Defense counsel first raised the issue of the fingerprint stipulation in his closing argument, stating that "Mr. Burroughs' prints are not on [the game case]. And they're not on the bullets. And they're not on those guns. And they're not on the holster. . . . [A]nd it's in our stipulation that will go to the jury room there's no indication that Mr. Burroughs handled those guns." The prosecutor responded in her rebuttal by acknowledging that the fingerprint report showed no fingerprints on the guns or ammunition, but also by reminding the jury that the evidence showed that Burroughs was wearing gloves when officers found him at the pile, explaining the absence of fingerprints. Prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd*, 209 F.3d at 535; *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). The prosecutor's statements regarding the fingerprint stipulation did not exceed the bounds of permissible argument. They were neither improper nor flagrant, and we reject Burroughs's argument to the contrary.

In sum, we find that Burroughs has not demonstrated error, much less plain error, regarding the prosecutor's conduct at trial. The prosecutor's remarks were not flagrant, and the evidence against Burroughs—which included the eyewitness testimony of Balmes and Burroughs's letter to his probation officer, which arguably was an implicit admission of possession—was strong. Moreover, defense counsel failed to object at trial. Therefore, reversal is not warranted on the basis of any alleged prosecutorial misconduct.

## D. Sufficiency of the Evidence to Support Conviction

"Our review of the sufficiency of the evidence is quite limited." *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992). "We view the evidence in the light most favorable to the government and will affirm the jury's verdict unless no rational trier of fact could have found, beyond a reasonable doubt, that [the defendant] committed the offenses charged." *Id.*

Burroughs contends that the evidence was insufficient to support his conviction because it showed only a "momentary possession." Specifically, Burroughs argues that he

> stumble[d] upon the guns and ammunition in an eviction pile. He never left the pile with those items and when the police arrived *he divested himself of them*. He never left the scene with the items. He never fled from the police. Thus he never demonstrated the requisite intent to possess the weapons. (emphasis added).

Burroughs cites to no authority that would warrant reversal based on the duration of his possession of the firearms and ammunition. He does argue that mere "proximity to contraband should not be enough to show constructive possession," citing *United States v. Anderson*, 632 F.3d 1264 (D.C. Cir. 2011). But Burroughs's brief acknowledges that he had *actual possession* of the firearms at least briefly; after all, a person cannot divest himself of something he does not first have in his possession. This concession alone defeats Burroughs's claim.

But Burroughs has a greater obstacle to overcome. At no time during the district court proceedings did Burroughs move for judgment of acquittal or a new trial pursuant to Federal Rule of Criminal Procedure 29. Absent a manifest miscarriage of justice, this failure is a waiver of Burroughs's right to challenge the sufficiency of the evidence on appeal. *See Morrow*, 977 F.2d at 230. Finding no miscarriage of justice, Burroughs's claim is barred.

## III.  CONCLUSION

For the reasons assigned herein, we **AFFIRM** the judgment of the district court.