RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0090p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee*,

    *v.*

MICHAEL WAYNE BAILEY,

          *Defendant-Appellant*.

No. 25-5255

─────────────

Appeal from the United States District Court for the Western District of Tennessee at Jackson.
No. 1:22-cr-10062-2—S. Thomas Anderson, District Judge.

Decided and Filed: March 23, 2026

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:** David W. Camp, CAMP & CAMP, PLLC, Jackson, Tennessee, for Appellant. Immanuel V. Chioco, UNITED STATES ATTORNEY'S OFFICE, Jackson, Tennessee, for Appellee.

─────────────

## OPINION

─────────────

LARSEN, Circuit Judge. A jury found Michael Bailey guilty of two counts of conspiracy to possess with the intent to distribute illegal narcotics. He was sentenced to 300 months' imprisonment. He appealed, challenging the jury instructions, the admission of certain evidence, and the sufficiency of the evidence to support the conspiracy charges. We AFFIRM.

I.

In 2021, several federal agencies and a Tennessee drug task force began investigating a drug trafficking organization operating within prisons run by the Tennessee Department of Corrections (TDOC).  Authorities believed that members of the Aryan Nation (or Aryan Brotherhood) gang, including Michael Bailey and James Payne, ran the organization.  At the time, Bailey was incarcerated; Payne was not.

The investigation revealed that around mid-2020, the "higher ups" in the gang contacted Payne and instructed him to start distributing drugs outside the prison and kick the profits back to gang members inside the prison system using phone apps such as Cash App.  Soon, Payne realized he had more drugs for sale than he could handle, so he enlisted Bailey's help.  The two made contact through a mutual acquaintance within the Aryan Nation.  Bailey and Payne communicated daily using the contraband cell phones that Payne bought for Bailey.  Bailey would also use these phones to communicate with others, using audio and video calls as well as Facebook Messenger, to coordinate the distribution of drugs outside the prison.  This went on for approximately nineteen weeks.

During this time, Bailey spoke daily to his girlfriend, Rebecca Lustre.  In late 2020, he directed Lustre to begin purchasing methamphetamine and fentanyl from Payne.  She complied, purchasing two pounds of methamphetamine and between two and five ounces of fentanyl per week.  Once Lustre received the drugs from Payne, Bailey would instruct her as to how to divide and weigh the drugs; and he would sometimes ask her to deliver them to Bailey's mother, Rose Marie Rhear, or to Matt Walker.  Walker also communicated frequently with Bailey about buying methamphetamine.  Sometimes Bailey would tell Walker to pick the drugs up from Lustre or Rhear; at other times Bailey would arrange for delivery.

Lustre's involvement in the distribution scheme ended on March 16, 2021, when a sheriff's deputy pulled her over for driving a car with improperly tinted windows.  A search of the car revealed methamphetamine, marijuana, and a white powdery substance that was later revealed to be fentanyl.  Lustre would later testify that, at Bailey's direction, she had picked the drugs up from Payne and was planning to divide and then distribute them to Walker and Rhear.

A few weeks later, Payne and Rhear were also apprehended after each made a stop at a storage facility in Spring City, Tennessee. Authorities confiscated large amounts of methamphetamine and a fentanyl mixture from a storage unit that Rhear had leased at Bailey's direction. In a recorded interview, later played for the jury, Rhear explained the cash she was carrying, saying that part of it had come from a "girl" her son had sent. Bailey had instructed Rhear to give the money to Payne.

Rhear told investigators that she communicated with Bailey in prison via his contraband cell phones. And she agreed to call him on one of his phones while law enforcement was present. Bailey spoke frantically in the recorded phone call: "Everybody's freaking out, mom. Everybody's freaking out. You gotta get home, mom. You gotta get home and clean the house out." He clarified that, by "home," he meant the storage unit and asked: "Whose name is on the storage building, mom?" "How the f*** did the police know about the storage building, mom?" "You didn't tell nobody about the storage building, did you?"

After his arrest, Payne agreed to cooperate with law enforcement. In July 2022, Bailey, Lustre, and Rhear, among others, were indicted for conspiracy to possess with the intent to distribute 50 grams or more of actual methamphetamine and conspiracy to possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, both in violation of 21 U.S.C. §§ 841(a)(1) and 846. A jury found Bailey guilty of both counts. He was sentenced to 300 months' imprisonment on each count to be served concurrently.

Bailey timely filed a motion for a judgment of acquittal and a motion for a new trial. The district court denied the motions. Bailey appealed.

II.

Bailey first challenges the jury instructions. He argues that the district court erred when it (1) improperly instructed the jury on the elements of conspiracy; and (2) failed to give an instruction to the jury about law enforcement officers' testimony. These errors, Bailey contends, stem from amendments to this circuit's pattern jury instructions, made after his trial ended but

while his motion for a new trial was pending. *See* Sixth Circuit Pattern Criminal Jury Instructions §§ 1.07B, 14.05.

A court may, on a motion by the defendant, grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Trial courts have broad discretion in crafting jury instructions, and abuse that discretion when their instructions, viewed as a whole, fail to accurately reflect the law." *United States v. Kettles*, 970 F.3d 637, 646 (6th Cir. 2020) (citation modified). We generally do not find jury-instruction error when the instructions provided "mirror or track" our pattern instructions and accurately reflect the governing law. *United States v. Robinson*, 99 F.4th 344, 365 (6th Cir. 2024) (quoting *United States v. Watson*, 778 F. App'x 340, 355 (6th Cir. 2019)); *see also United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011) ("A jury instruction that accurately reflects the governing law is not reversible error unless the instruction is 'confusing, misleading, or prejudicial.'" (citation omitted)).

Bailey did not object to the instructions before the jury retired, so we review for plain error. *See* Fed. R. Crim. P. 30(d); *Jones v. United States*, 527 U.S. 373, 387–88 (1999). To prevail under that standard, Bailey must show "(1) error, (2) that is plain, and (3) affects substantial rights." *Jones*, 527 U.S. at 389. Even if he makes that showing, an "appellate court should exercise its discretion to correct plain error only if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). The plain error standard applies to an unpreserved jury-instruction claim even when a post-trial change in the law gives rise to the claim that the jury instructions were erroneous. *See United States v. Taylor*, 102 F.3d 767, 769–70 (6th Cir. 1996) (per curiam). But in such cases, we determine whether an error is "plain" using the law that is current at the time of appeal. *Id.* at 771; *Henderson v. United States*, 568 U.S. 266, 271–72 (2013).

*Conspiracy instructions.* Bailey's challenge to the conspiracy instructions fails at the first step of plain error review. The conspiracy instruction read during Bailey's trial stated:

> For you to find the defendant guilty of the conspiracy you are considering, the government must prove both of the following elements beyond a reasonable doubt:

> First, that two or more persons conspired, or agreed, to possess with the intent to distribute the controlled substance alleged in that count of the indictment.

> Second, that the defendant knowingly and voluntarily joined the conspiracy.

R. 284, Jury Instructions, PageID 953–54. The two elements in this instruction mirror the elements of Pattern Instruction 14.05, pertaining to drug-trafficking conspiracies, in effect at the time of Bailey's trial. *See* Sixth Circuit Pattern Criminal Jury Instructions § 14.05 (last updated on March 24, 2023).[1] And even though the Pattern Instructions were amended after Bailey's trial, the amendment made no substantive change. Instead, the amendment merely recast the same substantive requirements as three elements instead of two.

> Amended Instruction § 14.05 states in relevant part:

> For you to find the defendant [any one of the defendants] guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt:

> > (A) First, that two or more persons conspired, or agreed, to [*insert substantive crime*].

> > (B) Second, that the defendant(s) knew of the conspiracy and its [objects] [aims] [goals], and

> > (C) Third, that the defendant joined the conspiracy with the intent that at least one of [the] conspirators engage in conduct that satisfies the elements of [*insert substantive crime*].

Sixth Circuit Pattern Criminal Jury Instructions § 14.05(2) (last amended on Nov. 15, 2024) (citation modified).

---

[1]The jury instructions given at Bailey's trial tracked and referred to Pattern Instruction § 14.05. And that is the instruction that pertains to drug conspiracies under 21 U.S.C. § 846. Bailey's briefing instead recites the elements of Pattern Instruction § 301A, which pertains to conspiracy to commit an offense under 18 U.S.C. § 371. As the government notes, the two instructions are the same, except that § 3.01A has an extra element, requiring proof of an overt act. Bailey does not contend on appeal that his conviction under § 846 required proof of an overt act. And any such argument would be incorrect. *See United States v. Shabani*, 513 U.S. 10, 17 (1994) (holding that controlled substances conspiracy under 21 U.S.C. § 846 does not require an overt act). So, like the district court, we refer to Pattern Instruction § 14.05.

Although differently phrased, each of these instructions accurately states the law. Each requires a jury to find the "essential elements" of a drug conspiracy under § 846: an agreement to violate the drug laws, the defendant's knowledge of the agreement, and the defendant's decision to voluntarily join (or "participate in") it. *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). And, as we recognized in *Potter*, whether these substantive requirements are "phrased as two elements or three" amounts to no more than a "semantic difference." *Id.* There was no error in the jury instruction given here.

*Law enforcement officer testimony.* Bailey next argues that the court erred by failing to give Sixth Circuit Pattern Criminal Jury Instruction § 1.07B, relating to the testimony of law enforcement officers. After Bailey's trial, and while his motion for a new trial was pending, our court added a new pattern instruction regarding law enforcement officer testimony. It states:

> You have heard the testimony of [a] law enforcement officer[s]. The fact that a witness is employed as a law enforcement officer does not mean that his testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness. You must decide, after reviewing all the evidence, whether you believe the testimony of the law enforcement witness and how much weight, if any, it deserves.

Sixth Circuit Pattern Criminal Jury Instructions § 1.07B (last amended on Nov. 15, 2024).

Bailey did not request an instruction on law-enforcement officer credibility before his case was submitted to the jury. And although our circuit did not adopt Pattern Instruction § 107.B until after Bailey's trial, nothing prevented Bailey from requesting a similar instruction. Indeed, a casual review of our cases reveals that trial courts in our circuit had given instructions nearly identical to Pattern Instruction § 1.07B long before Bailey's trial. *See United States v. Barron*, 940 F.3d 903, 920–21 (6th Cir. 2019); *United States v. Burroughs*, 465 F. App'x 530, 537–38 (6th Cir. 2012); *United States v. Cobb*, 397 F. App'x 128, 139–40 (6th Cir. 2010); *United States v. Becker*, 134 F.3d 372 (6th Cir. 1998) (unpublished table decision). Again, we review for plain error. *Jones*, 527 U.S. at 387–88. And again, Bailey's claim falters at the first step.

We have held that, even when a defendant requests an instruction similar to § 1.07B, a district court does not abuse its discretion in declining to give it, so long as the jury is given

alternative instructions that "adequately address[]" the substance of the requested instruction. *United States v. Alston*, 375 F.3d 408, 412 (6th Cir. 2004); *see also United States v. Daniels*, 396 F. App'x 257, 259 (6th Cir. 2010).

In *Alston*, the defendant claimed that the district court should have admonished the jury not to "lend more credibility to the testimony of law enforcement officials solely because of their status." 375 F.3d at 411. We found no error because the requested instruction was "substantially covered by other delivered instructions" on witness credibility. *Id.* at 412 (quotation omitted). With respect to "each witness," the court instructed the jurors to:

> Ask yourself if the witness had any relationship to the government or the defendant, or anything to gain or lose from the case, that might influence the witness's testimony. Ask yourself if the witness had any bias or prejudice or reason for testifying that might cause the witness to lie or to slant their testimony in favor of one side or the other.

*Id.* (citation modified). We noted that those instructions "invite[d] jurors to think about whether witnesses, such as the officers, may be biased because of their relationship with the government." *Id.* And we determined that they adequately addressed Alston's "concern that the officers' testimony would be given greater deference because of their status." *Id.*

In Bailey's trial, the jury was instructed using language that tracked Pattern Instruction § 1.07, which was applicable at the time of Bailey's trial. *See* Sixth Circuit Pattern Criminal Jury Instructions § 1.07 (last amended on March 1, 2023). And that language was identical to the language we found sufficient in *Alston*. If there is some distinction between Bailey's case and Alston's, Bailey has not explained it here. So the district court did not err, let alone plainly so, by failing to give a specific instruction, *sua sponte*, regarding the credibility of law enforcement witnesses.

III.

We turn next to Bailey's arguments related to the admission of evidence during his trial. He contends that the district court improperly admitted evidence of his gang affiliation, disciplinary records, and a telephone conversation. "We review a district court's decision to admit evidence for abuse of discretion." *United States v. You*, 74 F.4th 378, 388 (6th Cir. 2023).

*Gang affiliation.* Over Bailey's objection, the government introduced evidence that Bailey was part of the Aryan Nation gang to demonstrate the relationship among the co-conspirators. Bailey argues that this evidence was irrelevant. *See* Fed. R. Evid. 402 (providing that only relevant evidence is admissible). Alternatively, he suggests that the prejudicial effect of introducing his gang membership substantially outweighed its probative value. *See* Fed. R. Evid. 403 (explaining that the court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice). We disagree.

We have held that "[e]vidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case." *United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2014); *see also United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). Here, evidence of Bailey's gang affiliation was relevant because it linked Bailey, who was incarcerated during the conspiracy, with Payne, who was not. Bailey and Payne's membership in the gang explained how they met (through another member), how the conspiracy came about (at the behest of "higher-ups" in the gang), and its purpose and operation (selling drugs outside the prison and sending the proceeds back inside to benefit gang members). The gang connection also helped explain to the jury how Bailey received cell phones and was able to carry out the conspiracy while he was incarcerated. The district court did not err in concluding that the gang evidence was relevant.

Nor did the district court abuse its discretion in concluding that the probative value of the evidence was not substantially outweighed by unfair prejudice. *See* Fed. R. Evid. 403. Bailey offers little argument on this score, merely asserting that the gang evidence was "substantially prejudicial in that the jury was allowed to be informed that Bailey was a member of the Aryan [N]ation." Appellant Br. at 25. But evidence is not "unfairly prejudicial" within the meaning of Rule 403 simply because "it paints the defendant in a bad light." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). What's more, the jurors here were given a limiting instruction, explaining that they could consider the gang evidence only with respect to "identity, opportunity, and knowledge" and not "for any other purpose." R. 284, Jury Instruction, PageID 961. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)

(citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).  The district court did not err in admitting evidence of Bailey's gang affiliation.

*Disciplinary records.*  Bailey next argues that the district court erred in admitting, over his objection, evidence of his TDOC infractions for having a cell phone while incarcerated.

Under Federal Rule of Evidence 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Rule 404(b)(2), however, allows the admission of evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The district court carefully sorted through the disciplinary records the government sought to introduce and decided that those showing Bailey's cell phone possession during the time of the conspiracy were admissible.  The fact that Bailey possessed many cell phones throughout the conspiracy, and that some were found on his person, goes to proving identity and opportunity. *See* Fed. R. Evid. 404(b)(2).  This evidence helped identify Bailey as the person who sent Facebook messages to Lustre and who frequently communicated with Payne, Lustre, Rhear, and Walker via phone.  And it helped eliminate the possibility that it was his cellmate who owned and used the phones.  Moreover, the disciplinary records also helped show that Bailey had the opportunity to communicate with co-conspirators who were not in jail and to direct the drug trafficking activities despite being incarcerated.

Bailey has not shown that the probative value of this evidence was substantially outweighed by unfair prejudice. *See* Fed. R. Evid. 403.  Bailey again offers little argumentation on this point.  He states that the disciplinary records were "highly prejudicial evidence of Bailey's confinement in Tennessee Department of Correction."  Appellant Br. at 32.  But as the conspiracy was largely orchestrated from Bailey's prison cell, the mere fact of his confinement could hardly have been excluded on the ground that it was more prejudicial than probative.  As for the fact that he was the subject of "disciplinary action while being confined," *id.*, evidence that merely reveals negative facts about the defendant is not "unfairly prejudicial," *Sanders*, 95 F.3d at 453.  Instead, the question is whether the evidence would likely encourage the jury to

make a "decision on an improper basis," despite its "legitimate probative force." *Ford*, 761 F.3d at 648 (citation omitted). We see no such danger here. And as with the gang-affiliation evidence, the district court gave a limiting instruction, telling the jury that it could consider the disciplinary records only as proof of "identity, opportunity and knowledge" and admonishing the jury that Bailey was on trial solely for the drug conspiracy, not for any other act. R. 284, Jury Instructions, PageID 961. We see no abuse of discretion in admitting this evidence.

*Telephone conversation.* Finally, Bailey argues that the court erred in admitting a recorded phone call between him and his mother, Rhear, because it was hearsay and lacking a foundation.

Bailey waived his hearsay argument below. Although he initially objected to "any recordings" involving Bailey on hearsay grounds, when the call with Bailey's mother was introduced at trial, Bailey's counsel said he wasn't challenging its introduction for "hearsay, but authentication." R. 308, Trial Tr., PageID 1357, 1559. He disclaimed that the objection to this call was "per se as much evidentiary from the perspective of the hearsay exception," and repeated that the objection was "more primarily authentication." *Id.* at 1557. And after the government's case-in-chief, Bailey moved for a new trial, objecting again to the recording on the basis of authentication, not hearsay. That course of conduct constituted a withdrawal of any hearsay objection. *See United States v. Beard*, 394 F. App'x 200, 204 (6th Cir. 2010). So Bailey has waived this argument. *Id.* (citing *United States v. Denkins*, 367 F.3d 537, 544 (6th Cir. 2004)).

We turn to Bailey's authentication objection. To authenticate "an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This is a relatively low hurdle. *See United States v. Hall*, 20 F.4th 1085, 1104 (6th Cir. 2022). Testimony of a witness with knowledge satisfies the requirement. Fed. R. Evid. 901(b)(1).

Here, the government laid a sufficient foundation for the recording. FBI Special Agent David Mobley testified that he interviewed Rhear, and the interview was recorded and played for the jury. During the interview, Rhear agreed to call Bailey while Mobley was present. At trial,

Mobley identified Bailey as the person speaking to his mother on the call. Although Mobley had not met Bailey, he testified that he had listened to recordings of Bailey's voice on several occasions throughout his investigation. Additionally, Mobley used context clues surrounding the call to identify Bailey as the speaker. Bailey, for example, referred to Rhear as "mom" throughout the call. This evidence is sufficient to meet the low hurdle of authenticating evidence under Rule 901(a). *See United States v. Mallory*, 902 F.3d 584, 595 (6th Cir. 2018); *United States v. Quintana*, 763 F. App'x 422, 427 (6th Cir. 2019). The district court did not abuse its discretion in admitting the phone call.

IV.

Bailey finally challenges the sufficiency of the evidence to support his convictions. We review sufficiency challenges de novo, asking "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022) (quoting *United States v. Emmons*, 8 F.4th 454, 477–78 (6th Cir. 2021)).

For a jury to find a defendant guilty of drug conspiracy under 21 U.S.C. § 846, the government must prove three elements: "(1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *Id.* (citation omitted). "Participation" does not require "an 'action' furthering the conspiracy because 'proof of an overt act is not required to establish a violation of 21 U.S.C. § 846.'" *Potter*, 927 F.3d at 453, (quoting *Shabani*, 513 U.S. at 17). Instead, "participation" just means that the defendant actually joined the conspiracy. *Id.*

Bailey doesn't dispute that an agreement to violate drug laws existed. Rather, he contends that the evidence was not sufficient to show his intent to join or his participation in the conspiracy.

Bailey carries a heavy burden. "All reasonable inferences must be made to support the jury verdict." *Sadler*, 24 F.4th at 539 (quoting *United States v. LaVictor*, 848 F.3d 428, 456 (6th Cir. 2017)). Circumstantial evidence by itself is sufficient, and we cannot reweigh the evidence, reevaluate a witness's credibility, or substitute our judgment for that of the jury. *Id.*

The government presented testimony from Lustre, Payne, and Walker, who testified that they received regular instructions from Bailey, via contraband cell phones, as to how and when to receive or transport drugs in exchange for cash. Payne testified about how the conspiracy was formed, how Bailey agreed to join it, and how he was even "very good at it." Bailey connected Payne to purchasers, including Walker, Rhear, and Lustre. And Bailey coordinated the drug transactions, instructing Payne and Lustre where and when to meet the buyers. Facebook messages showed Bailey instructing Lustre how to weigh and distribute the drugs. And, when the jig was up, a recorded phone call revealed Bailey telling his mother to "clean . . . out" the storage unit, where large quantities of drugs were stored. So, despite being incarcerated, Bailey was the linchpin. At his direction, these drug transactions occurred weekly for months.

Bailey protests that there was no evidence that he physically possessed any of the drugs or that he profited from the sales. The former is true; the latter is not. Lustre testified, for example, that Bailey helped her open a bank account to store drug proceeds, and that he could access the account through its routing and account numbers. And at Bailey's direction, Lustre would use some of the drug proceeds to pay Bailey's phone bill or pad Bailey's commissary account. But, in any event, neither possession nor profit matters. Ample evidence showed the three essential elements for a conviction under § 846: "an agreement to violate the drug laws," Bailey's knowledge of it, and his "decision to voluntarily join (or 'participate in') it." *Potter*, 927 F.3d at 453.

\* \* \*

For the reasons set forth above, we AFFIRM.